# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### AT CHARLOTTE

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                  CIVIL ACTION NO.  3:21-cv-00480

BONSAL AMERICAN, INC.
*formerly known as* Oldcastle Retail, Inc.,
OLDCASTLE BUILDING PRODUCTS INC.
*formerly known as* Oldcastle Retail, Inc.,
OLDCASTLE LAWN & GARDEN, INC.,
JOHN DOES 1-10, and
ABC CORPORTATIONS 1-10

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are (1) Plaintiff CSX Transportation, Inc.'s ("CSX") Motions in Limine [ECF 178, 180, 184, 186, 190, 192, 194, 196, 202, and 204], filed June 23, 2025, and (2) Defendants Bonsal American, Inc. f/k/a., Oldcastle Retail, Inc., Oldcastle Building Products, Inc. f/k/a Oldcastle Retail, Inc., Oldcastle Lawn & Garden, Inc.'s ("Defendants") Omnibus Motion in Limine Nos. 1-12 [ECF 174], filed June 23, 2025.

### I.

### A.    *Defendants' Omnibus Motion Nos. 1-12 [ECF 174]*

#### *1. Chad Beverly's Diagram Opinions*

Defendants seek to exclude any reference "to Chad Beverly's Diagram depicting his theory of the cause of the derailment and his testimony regarding the cause of the derailment" pursuant to Rules 403, 701, 702, and 802. [ECF 174 at 1; ECF 175 at 5-7]. Defendants assert Mr. Beverly's diagram and testimony as to the cause of the accident are inadmissible opinions and

conclusions inasmuch as lay opinion testimony about "the *cause* of an accident is typically *not* permitted," and instead such conclusions must be proffered by an expert witness. [ECF 175 at 5-6 (emphasis in original) (citing *State v. Denton*, 265 N.C. App. 632,636, 829 S.E.2d 674, 678 (2019); *State v. Maready*, 205 N.C. App. 1, 17 (2010); *H/S Wilson Outparcels, LLC v. Kroger Limited Partnership I*, 2017 WL 4293404, at *3 (E.D.N.C. Sep. 27, 2017)].

CSX responds "Mr. Beverly will testify at trial to the depiction in the aid [and] will explain to the jury where he walked, where he observed water flow and debris, and where the source of the flow occurred on Oldcastle's property." [ECF 212 at 5-6]. CSX contends Mr. Beverly's observations, as reflected in the diagram, are relevant, based on first-hand observations and personal knowledge, "and will assist the fact finder in understanding the evidence presented." [ECF 212 at 2-3]. Simply put, CSX contends the aid "merely represents what Mr. Beverly observed and rationally perceived at the derailment site," and thus does not warrant exclusion.

Opinion testimony from a lay witness is permissible when based on personal knowledge, helpful "to clearly understanding the witness's testimony or determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701; *United States v. Perkins*, 470 F.3d 150, 155-56 (4th Cir. 2006) (noting "lay opinion testimony *must* be based on personal knowledge"). Insofar as Mr. Beverly's testimony and diagram will not be used as an accident reconstruction, do not rely on any specialized knowledge, and merely reflect his first-hand knowledge, personal observations and opinions following the derailment, the Motion is **DENIED**. Any disagreement relating to the scope of the ruling may be addressed at trial.

### 2. CSX Investigative Reports

Defendants seek to exclude lay opinions in two of CSX's investigative reports regarding the cause of the derailment and related lay witness testimony from Matt Callaway,

Rodney Powers, and Matt Carson. [ECF 174 at 2; ECF 175 at 7-9]. Defendants point to the following conclusory statement in both reports: "A sudden eruption of the dam breaking that lead to catastrophic failure of the CSX ballast line subsequently derailing the Q58315," contending the same is an inadmissible lay opinion about the cause of the derailment. [ECF 175 at 8]. Defendants assert Callaway, Powers, and Carson "should not be permitted to give lay opinions at to the cause of the derailment, and allowing the conclusions of a report completed by a lay person who did not personally witness the derailment would do just that." [*Id.*]. Defendants assert the same "is particularly true where the investigative report is authored by an involved party . . . with a vested interest in laying blame on a party other than itself." [*Id.*]. They thus maintain introduction of conclusions reached by nonexperts "will only serve to unfairly prejudice" Defendants and confuse the jury. To the extent CSX intends to offer the conclusions in the reports and supporting testimony to establish causation and to prove the truth of the matter asserted, namely, "that the trackbed collapse and derailment were caused by the sudden eruption of the Wash Pond or Stockpile Area," Defendants maintain this is inadmissible hearsay evidence. [*Id.*].

CSX responds it is unable to discern one of the two Reports to which Defendants object. Insofar as Defendants object to CSX exhibit P-73, Defendants contend the Report "likely falls within the business record exception" to the hearsay rule inasmuch as it is a standard Report CSX prepares after an incident, especially a derailment, to satisfy regulatory requirements. [ECF 213 at 2-3]. Respecting the testimony of Callaway, Powers, and Carson, CSX contends they are permitted to offer testimony respecting their personal knowledge and draw rational inferences from the same. At bottom, CSX asserts it "should have the opportunity to lay [a] foundation to support their testimony and the information contained in the Report." [*Id.* at 3].

3

The Court presently **RESERVES JUDGMENT** on the Motion. The matter may be raised anew at trial upon timely objection when the challenged evidence is tendered for admission.

### 3. Kent Lowe's Phone Call and Opinions

Defendants seek to exclude any reference to the "lay opinions of Kent Lowe in his recorded phone call to CSX police and in his deposition" pursuant to Rules 403, 701, 702, and 802. [ECF 174 at 2; ECF 175 at 9-11]. Defendants assert Mr. Lowe is "a former disgruntled, terminated Oldcastle employee" and his opinions as to the cause of the derailment are inadmissible lay opinions based on insufficient personal knowledge and conclusory in such a manner that requires specialized knowledge.[1] They note Mr. Lowe made the phone call to CSX police after he was terminated and that he did not observe the collapse of the trackbed or the derailment. Defendants maintain "Mr. Lowe's conclusion as to the cause of the trackbed collapse and derailment is nothing more than a guess by someone without specialized knowledge or expert qualification," which would prejudice Defendants and mislead the jury. [ECF 175 at 11]. To the extent CSX intends to offer the call to establish the truth of the matter asserted -- that the trackbed collapse and derailment were caused by Defendants' failure to maintain the drainage ditch -- Defendants contend it is inadmissible hearsay testimony.

CSX responds it "intends to solicit testimony and evidence from Mr. Lowe based on his observations and perception gained through his 30+ years of employment at the mine." [ECF 215 at 3]. It contends Mr. Lowe possesses personal knowledge of Defendants' property, the

---

[1] In the recorded call, Mr. Lowe alleges the derailment was caused by Defendants' failure to maintain the drainage ditch on its property. [ECF 175 at 9]. Specifically, he states "'I know the main cause [of] what derailed your train . . . it was a buildup of gravel that had been pushed over a hill on a stockpile and there was a ditch at the bottom of this hill that [was] supposed to [have] been maintained for the last 15 years.'" [*Id*. at 9-10].

operation and management of its mine and gravel plant, and its water management system. CSX thus maintains Mr. Lowe's 30-year tenure provides a sufficient basis for personal knowledge and opinion testimony rationally based on his perceptions. At minimum, CSX asserts it should be permitted "to solicit testimony and evidence from Mr. Lowe to establish his personal knowledge," prior to any decision limiting the scope of his testimony. [*Id.* at 4]. CSX also challenges Defendants' contention that Mr. Lowe had been terminated prior to the phone call. CSX thus asserts it is possible the recorded phone call could fall into the party admission exception to the hearsay rule.

The Court presently **RESERVES JUDGMNET** on the Motion. The matter may be raised anew at trial upon timely objection when the challenged evidence is tendered for admission.

### *4. Post-Derailment Installation of Corrugated Pipe*

Defendants seek exclusion of "all evidence, argument, or inference to the corrugated pipe installed in the Stockpile Area after the derailment at some unknown point in time, including, but not limited to all photographs taken by experts on behalf of CSX, Lloyds, and Oldcastle in either or both the Lloyds case and" in this matter. [ECF 175 at 12]. Defendants assert such evidence is irrelevant and "invites speculation of the facts and unfair prejudice" to them. [*Id.*]. CSX opposes the motion, asserting it lacks the necessary specificity to provide relief and is thus premature.

Inasmuch as a blanket exclusion of unspecified evidence, argument, or testimony related to the installation of the corrugated pipe is premature at this juncture, the Motion is **DENIED WITHOUT PREJUDICE**.

*5. Settlement Payments to Train Crew and Purported Contribution Claim*

Defendants seek to exclude any reference to settlement payments made by CSX to "crew members William Detrevill and Matthew Gambrell" in separate lawsuits brought in South Carolina state court arising from the same incident. [ECF 174 at 3; ECF 175 at 13]. Additionally, they seek to exclude any reference to a purported contribution claim made by CSX, based on the settlement claims, but not raised in the Complaint or litigation in the instant case.

CSX notes its "exhibit list does not contain any evidence relating to the settlement of either of these cases, including the applicable settlement agreements, which it would need to support a contribution claim, nor has CSX moved to amend its Complaint in this action to include a contribution claim[.]" [ECF 217 at 2]. CSX asserts Defendants are improperly seeking "a legal determination as to the viability of CSX's contribution claims which have not been alleged in this action, not an evidentiary ruling on a disputed issue." [*Id*. at 4]. Nonetheless, CSX asserts if "the Court is inclined to entertain [Defendants'] motion, then CSX asserts it has a viable contribution claim and reserves its right to seek recovery." [*Id*.].

It does not appear CSX has included a contribution claim in the proposed integrated pretrial order. Upon entry of that order, the pleadings will merge into the document and, if the claim is not found therein, it will likely be precluded. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (explaining that under Rule 16(e), the final pretrial order supersedes all prior pleadings and controls the subsequent course of the action). The Motion thus appears moot and is **DENIED WITHOUT PREJUDICE**.

*6. Multi-Million Dollar New Locomotive Invoice*

Defendants seek to exclude reference to the multi-million-dollar invoice for "a new 6-axle 4400 horsepower locomotive complying with Tier 3 EPA emissions standards" inasmuch

as the new locomotive "is not comparable to any of the three destroyed locomotives, none of which were new or complied with Tier 3 EPA emissions standards." [ECF 174 at 3]. Defendants thus assert the invoice is irrelevant, an improper measure of damages, and should be excluded pursuant to Rule 402. Defendants further contend evidence of the invoice for "a new higher standard locomotive as representative of the three completely different lower standard . . . used locomotives," would be unfairly prejudicial and would confuse the jury. [ECF 175 at 17]. Defendants thus seek the exclusion of "all evidence, argument, or inference relating to the CSX invoice and cost of a new 6-axle 4400 horsepower locomotive as evidence of the cost to replace the three destroyed locomotives." [*Id*. at 18].

CSX opposes the motion, asserting it largely reiterates issues previously rejected by the Court. [ECF 222 at 1, 3]. Specifically, CSX notes the Court previously rejected Defendants' "view that CSX is restricted to a rigid application of a fair market value calculation . . . ." [*Id*. at 2]. In its Amended Order addressing the parties' Motions for Summary Judgment, the Court found "[a] question of fact remains as to whether a market exists for [CSX's] locomotives." [ECF 126 at 27]. Inasmuch as the Court determined testimony from a single expert respecting "a fair market calculation [was] insufficient to establish a market for damages as a matter of law[,]" it concluded "[t]he jury may consider additional evidence regarding the destroyed locomotives to determine whether a market exists, and if so, what constitutes a proper calculation of a fair market value based on the unique circumstances of the case." [*Id*.]. The Court explained the "proper measure of damages for the damaged locomotive is cost of repairs," which are ongoing. [*Id*.]. And inasmuch as "repairs are ongoing, . . . Defendants' request to declare an exact amount or limit what evidence may be presented regarding repairs" was denied. In accordance with this ruling, the Motion is **DENIED**.

### 7. Oldcastle's Alleged Trespass During Investigation

Defendants seek to preclude any reference to allegations made by CSX that Oldcastle "trespassed on CSX's right of way during the derailment investigation and should not have taken certain photographs of the trackbed." [ECF 175 at 18]. Defendants contend permitting the same "would confuse and mislead the jury and waste time." [*Id*.]. They also assert the trespass allegations are inherently false and contend their consultant, "Mike Walker, and others had CSX's permission to go onto CSX's right of way in the days following the derailment" and were often "accompanied by a CSX employee who observed the Oldcastle employees taking photographs and did not stop them from doing so." [*Id*.]. They contend at no point during written discovery or depositions did CSX raise the alleged trespass and only did so on September 4, 2024, upon receiving Defendants' exhibit list, at which point CSX "asserted trespass as a basis to exclude [the] photographs from evidence." [*Id*.]. Defendants maintain it would be prejudicial to permit this trespass allegation "at the 11th hour," suggesting Defendants derailment investigation was illegal. They further assert there is no other permissible purpose for introducing this trespass theory, and regardless of whether a trespass occurred, it "does not disprove the truthfulness of testimony regarding the photographs taken . . . [as] the photographs show what they show." [*Id*. at 19].

CSX responds the Motion is overly broad inasmuch as "it seeks a blanket exclusion prohibiting CSX from soliciting any evidence regarding Oldcastle trespassing on CSX's property" and "advances conclusions, without citation to the record, dressed as established facts[.]" [ECF 224 at 1]. CSX thus asserts the motion lacks the necessary context, preventing adequate evaluation. Alternatively, if the Court is inclined to entertain the Motion, CSX asserts whether Defendants trespassed on its property "is evidence of a wrongful act, and is admissible under Fed. R. Evid. 404(b)(2)." [*Id*. at 2]. CSX further contends "[d]epending on how trial unfolds, including the

evidence [Defendants] solicit, and theories or arguments it advances, that will dictate whether evidence concerning . . . [the] trespass is admissible." [*Id.*].

Inasmuch as it would be premature at this juncture to assume the scope of how CSX intends to use trespass, and whether its usage is within the acceptable parameters, the Motion is **DENIED WITHOUT PREJUDICE.** The matter may be raised anew at trial when the testimony and evidence related thereto are readily discernable. The Court would note, however, that raising the issue of trespass without any case-related consequences arising therefrom, such as spoliation or site interference, would raise a substantial issue under Rule 403.

### 8. Dam Breach at Hedrick the Day After Derailment

Defendants seek to exclude any reference to a dam breach on the property of B.V. Hedrick Sand & Gravel Company ("Hedrick"). The Hedrick dam is adjacent to -- but downstream of -- Oldcastle's property and south of the subject railroad tracks. It breached on September 17, 2018, the day after the CSX derailment. [ECF 175 at 19-20]. Defendants allege the dam breach is irrelevant, distinct from events that occurred on Oldcastle property, and may confuse the jury and waste time. [ECF 175 at 19-20].

CSX opposes the motion, asserting Defendants' argument fails to put forward sufficient context and substance. [ECF 226 at 2]. Further, CSX asserts the dam breach is relevant evidence because the water systems of Oldcastle and Hedrick's properties are interconnected. [ECF 226 at 2]. As such, "[i]f a dam breached on Hedrick's property, it is evidence that Oldcastle's system failed," and relevant to the instant issue. [ECF 6 at 2-3].

The Court **RESERVES JUDGMENT** on Defendants' Motion, awaiting further evidence on connectivity and related information respecting the breach.

*9. North Carolina Department of Environmental Quality ("NCDEQ") Inspection April 2019*

Defendants seek to bar CSX from introducing evidence from NCDEQ's April 2019 inspection of Oldcastle's facility. [ECF 175 at 20]. They contend the inspections, which occurred approximately eight months after the derailment, address issues unrelated to the particular areas of property at issue in the instant case, namely, the Wash Pond and Stockpile Area, and should be excluded pursuant to Rules 402, 403 and 404. [ECF 175 at 20].

CSX responds "[w]hether Oldcastle was compliant with its stormwater permit, and Oldcastle's management practices related to its water recycling systems, are relevant." [ECF 227 at 3]. Specifically in contention are the following matters: (1) "Trial exhibit P-191 is a June 5, 2019 letter from the North Carolina Environmental Quality to Oldcastle regarding a notice of violation with respect to its stormwater permit," and (2) "P-251 is the 'Compliance Inspection Report' that the government inspectors conducted on May 30, 2019." [*Id.* at 2]. Regarding Trial Exhibit P-191, the letter details non-performance of semi-annual inspections, a failure "to conduct analytical monitoring since Period 1 of 2018," a lack of appropriately maintained records, and other violations. [*Id.*] (citation omitted). Regarding Trial Exhibit P-251, among other things, this report "deemed Oldcastle's 'mining activities stormwater discharge' as non-compliant and raised concerns with the 'storm water.'" [*Id.*].

The challenged evidence appears relevant and further does not appear to contravene Rule 403. A final determination on the matter, however, awaits trial. The Court **RESERVES JUDGMENT** on the Motion.

*10. March 2019 Mud Slide*

Defendants seek to exclude reference to a mud slide that occurred on Oldcastle's property in March 2019. [ECF at 21]. They contend the mudslide cannot be connected to the area

of Oldcastle's property at issue, the Wash Pond or the Stockpile, as these areas are north of the railroad tracks, while the dam is located on Oldcastle's property south of the railroad tracks. [ECF 175 at 21].

CSX asserts Defendants "fail to address admissibility on all potential grounds. It asserts that the mud slide occurred at a dam on its property but is not relevant because it occurred after the derailment." [ECF 228 at 2] (cleaned up). The matter requires further development preceding an admissibility determination. The objection is better suited for objection at trial when the context and setting will appear with greater precision. Accordingly, the Court **RESERVES JUDGMENT** on the Motion.

### 11. Property Under Hedrick's Ownership

Defendants sold their property to Hedrick in December 2019 and seek to exclude any reference to Hedrick's operations and/or property management concerning the property. [ECF 175 at 22]. They contend introducing evidence of Hedrick's operations or regulatory compliance with NCDEQ or the Mine Safety Health Administration following the date of sale are irrelevant and would be unfairly prejudicial. [ECF 175 at 22 (citing Fed. R. Evid. 401, 402, 403, and 404)].

CSX opposes the motion, noting its belief Defendants are "present[ing] another short motion with minimal context and background facts but seek a sweeping evidentiary ruling to exclude an entire topic from trial." [ECF 229 at 2]. Specifically, "an issue in this case is establishing the standard of care, i.e., how should Oldcastle have reasonably operated and managed its property. Any evidence regarding how Hedrick operated and managed the property is relevant to show the standard of care." [*Id.*]. The Court agrees this is an issue more appropriately resolved at trial, where it can be properly evaluated in the full context in which it is being presented. Accordingly, the Court **RESERVES JUDGMENT** on the Motion.

11

*12. Liability Insurance*

Defendants seek an order barring CSX from introducing at trial any reference to Defendants' liability insurance or its liability insurance carrier. [ECF 174 at 5]. CSX opposes the motion. [ECF 232]. CSX asserts the evidence seeking to be introduced, a June 1, 2018, email from Oldcastle's regional safety manager including reference to a "Property Risk management Guide from Liberty Mutual Insurance," does not identify an insurance policy, a policy number, nor indicate Defendants maintained liability insurance through Liberty Mutual. [ECF 232 at 2].

Insofar as the communication at issue references the insurer, Liberty Mutual Insurance, whom Defendants concede holds their liability insurance, the email should be redacted. [ECF 175 at 23, ECF 232 at 2]. Accordingly, the Court **GRANTS** Defendants' motion.

## B. CSX's Motion to Exclude Evidence & Testimony Regarding Certain Historic Track Maps [ECF 178]

CSX moves to exclude evidence relating to historic track maps (identified as Trial Exhibits D-135 and D-140) inasmuch as Defendants purportedly intend to use them for the purpose of showing a culvert previously existed at or near the derailment site but was removed by CSX. [ECF 178, 179]. CSX contends any evidence of the existence and removal of the culvert is irrelevant given the Court's summary judgment ruling that arguments related to CSX's lack of a culvert installation to support Defendants' contributory negligence claim were preempted. [*See generally* ECF 179].

Defendants respond the maps are relevant (1) to their remaining contributory negligence defense that CSX should have completed flood or hydraulic studies at the derailment site to understand potential water flow path's from Oldcastle's property and other adjacent properties at some point in time after the culvert's removal, and (2) to support proximate cause as the removal of the culvert without subsequent hydraulic studies is evidence of potential trackbed

12

stability issues, which Defendants assert contributed to its collapse after it was oversaturated from Hurricane/Tropical Storm Florence.

The track maps are relevant to Defendants' remaining contributory negligence theory and to the issue of proximate cause. CSX's knowledge of the culvert is relevant to demonstrate what it knew respecting drainage issues at that portion of the trackbed. If Defendants attempt to use the maps for an improper purpose, the same can be handled upon CSX's timely objection at trial. Accordingly, the Motion [**ECF 178**] is **DENIED**.

**C.** **CSX's Motion to Exclude Evidence & Testimony Regarding 2016 Surface Alignment Alert Email [ECF 180]**

CSX moves to exclude evidence relating to an August 31, 2021, automated "Truck Lateral exception" notification regarding milepost SF 270.44 on the Monroe Subdivision, marked as Trial Exhibit D-53, as "irrelevant, a waste of time, and unduly prejudicial." [ECF 181 at 3]. The entirety of the automated email is as follows:

> CSX Engine CSX264 equipped with accelerometers experienced a high priority Truck Lateral exception near SF 270.44 on the Monroe Subdivision on 08/31/2016. Exception must be inspected within 72 hours.

[*Id*. at 2 (referencing ECF 119); *see also* Trial Exhibit D-53)]. CSX maintains the notification is not evidence of a defect but merely a condition, nor was the subject of the notification a remarkable event. It asserts the email is irrelevant given that it occurred two years prior to the derailment, the track deviation occurred 209 feet from the derailment site, and two years of inspection records demonstrate no defect at this particular location. Alternatively, it claims the email is unduly prejudicial and would waste the jury's time given its purported insignificance.

Defendants respond the email is relevant (1) to show proximate cause, as it provides evidence of structural instability in the track near the derailment site, (2) CSX's knowledge of such instability, and (3) the expected expert testimony from Alan Pagel and Robert Gentry. Defendants

further assert the email is neither frivolous, nor unduly prejudicial inasmuch as CSX will be able to challenge the email's significance through counter evidence and cross-examination.

The notification is relevant to Defendants' track instability defense and the issue of proximate cause. Its probative value is not outweighed by a danger of unfair prejudice, nor would such evidence waste the jury's time. CSX's contentions go weight, not admissibility. The jury will ultimately decide how much weight to afford the email after consideration of CSX's counter evidence and arguments at trial. Accordingly, the Motion [**ECF 180**] is **DENIED**.

**D.    *CSX's Motion to Exclude Evidence & Testimony Referencing the Weather as an "Act of God" [ECF 182]***

CSX seeks to preclude any witness from opining or testifying the weather event at issue in the instant case was an "Act of God." [ECF 183 at 3–4]. CSX also moves to exclude Defendants from pursuing the "Act of God" defense. [*Id.* at 4–5].

*1.    Act of God Defense at Trial*

CSX contends Defendants lack the evidentiary support necessary to present the Act of God defense to a jury. [ECF 183 at 4]. Specifically, CSX asserts none of Defendants' experts have concluded the weather was the sole cause of the derailment, absent any contribution of fault or negligence by Defendants.  CSX further asserts permitting Defendants to advance this defense would risk confusing the jury due to the disparity between the phrase's colloquial and legal definitions and use. Because the "Act of God" defense requires a showing the event was both unforeseeable and the sole cause of the damage, CSX maintains Defendants cannot meet the burden absent competent expert testimony attributing the cause exclusively to the weather. [*Id.*].

Defendants respond CSX is improperly attempting to utilize its motion to exclude a disputed legal defense. [ECF 209 at 1]. They further provide a variety of examples of their experts who are expected to testify as to the track's collapse due to rainfall from Florence.

14

The Supreme Court has recognized when damage is shown to result from an "Act of God," such as an extraordinary flood, a defendant may be exempt from liability unless the plaintiff proves the defendant's negligence contributed to the loss. *Memphis & C. R. Co. v. Reeves*, 77 U.S. 176, 189 (1869). The High Court noted that if a defendant produces sufficient evidence to show an overpowering natural cause was responsible, then the burden of proving negligence shifts to the opposing party. *Id*. at 189–90. However, the threshold determination of whether the natural event was the sole proximate cause of the injury remains a factual question, typically supported by evidence such as expert testimony. *Id.*

Inasmuch as Defendants have sufficiently alleged and provided expert support for their theory that the weather event was the sole proximate cause of the damage, exclusion of the affirmative defense is unwarranted. Accordingly, the Motion [**ECF 180**] is **DENIED** insofar as it seeks exclusion of the presentation of the defense at trial.

### 2. Witness Testimony Referencing "Act of God"

CSX also seeks exclusion of witness testimony characterizing the weather event as an "Act of God," contending the same would constitute improper lay opinion. CSX asserts any minimal probative value is substantially outweighed by the risk of unfair prejudice and jury confusion, a risk that can be entirely avoided by limiting witness testimony to factual descriptions of the observed weather conditions without referencing the legal term.

Defendants respond that witnesses should not be precluded from describing their personal observations of fact as an "Act of God." [ECF 209]. They contend any potential confusion between the colloquial and legal meanings of the term could be mitigated through an appropriately tailored jury instruction defining the elements of the "Act of God" defense.

The Court disagrees with Defendants given the term's legal significance and the ability of witnesses to describe the weather conditions without resorting to the legal characterization. Lay witnesses will remain free to offer testimony as to their personal observations respecting the severity of the weather conditions without referencing the same as an Act of God. Accordingly, the Motion [**ECF 182**] is **GRANTED** insofar as it relates to the exclusion of lay witness testimony describing the incident as an Act of God.

### E.  CSX's Motion to Exclude Evidence & Testimony Regarding Fact and Circumstances Described in the Edwards v. CSX Transportation, Inc. Lawsuit [ECF 184]

CSX moves to exclude evidence and testimony regarding the facts and circumstances of the *Edwards v. CSX Transportation, Inc.* (hereinafter "*Edwards*") case in the United States District Court for the Eastern District of North Carolina.[2] [ECF 184]. CSX contends *Edwards* has "no relation to any consequential fact at issue" and is therefore irrelevant.[3] [ECF 185 at 3]. Alternatively, CSX maintains the minimal relevance of *Edwards* is substantially outweighed by its highly prejudicial impact and anticipates Defendants will "weaponize the allegations, which are not even established facts, to harm CSX's reputation or standing before the jury." [*Id*. at 3–4].

---

[2] CSX's Motion in Limine moves the Court to exclude "*Edwards v. CSX Transportation, Inc.* Case nos. 7:18-cv-169 and 7:18-Cv-178." The Court surmises CSX's motion to encompass the following opinions: *Edwards v. CSX Transportation, Inc.*, No. 7:18-CV-169-BO, 2019 WL 12262534 (E.D.N.C. July 16, 2019), *aff'd in part, rev'd in part and remanded*, 983 F.3d 112 (4th Cir. 2020); *Edwards v. CSX Transportation, Inc.*, 983 F.3d 112 (4th Cir. 2020); *Edwards v. CSXT Transportation, Inc.*, 338 F.R.D. 590 (E.D.N.C. 2021); *Edwards v. CSX Transportation, Inc.*, 684 F. Supp. 3d 443 (E.D.N.C. 2023).

[3] In *Edwards*, CSX was sued due to its refusal to cooperate with requests from the city to take preventive measures in preparation for Hurricane Florence in 2018 and Hurricane Matthew in 2016. On both occasions flooding occurred causing "catastrophic damage." *See Edwards v. CSX Transportation, Inc.*, 983 F.3d 112, 116–17 (4th Cir. 2020). Summary Judgement was ultimately entered in favor of CSX. *See Edwards v. CSX Transportation, Inc*., 684 F. Supp. 3d 443, 451 (E.D.N.C. 2023).

16

Defendants respond they do not oppose CSX's motion inasmuch as they do not intend to introduce evidence referencing *Edwards* or the Lumberton, North Carolina, flooding at trial and agree the same is irrelevant. [ECF 210 at 1]. Nonetheless, to the extent CSX's motion also seeks exclusion of any mention of "underlying 'facts and/or circumstances referenced in' *Edwards* . . . that overlap with those in this action, such as the existence of Florence moving through North Carolina and South Carolina, the rainfall and weather patterns that occurred during Florence, and CSX's notice of anticipated rainfall and weather patterns during Florence," all in relation to the derailment in this matter, Defendants oppose the motion as "overbroad." [*Id.* at 1-2]. They maintain these underlying facts and circumstances are relevant to their Act of God, proximate cause, and contributory negligence defenses. [*Id.* at 2].

Inasmuch as the parties agree *Edwards* and/or the Lumberton flooding is irrelevant to this case, the Motion [**ECF 184**] is **GRANTED**. The Defendants remain free to present evidence related to Hurricane Florence's existence, its weather patterns, and CSX's knowledge of the same at trial, inasmuch as such information is doubtless relevant to their remaining defenses. Any disagreement respecting the scope of the ruling may be addressed at trial.

**F.** ***CSX's Motion to Exclude Evidence & Testimony Regarding Crew Statements by CSX Personnel Preceding the Derailment [ECF 186]***

CSX moves to preclude Defendants from prejudicially characterizing statements made by CSX's train operating crew pertaining to the derailment. [ECF 186]. It seeks exclusion of comments exchanged between its conductor Mr. Gambrell and its engineer Mr. Detreville on the date of the derailment related to the hazardous weather conditions and continued operation of the train. These statements include describing the continued operations as "ridiculous" and that CSX "was trying to kill them" by permitting operations to continue. Statements were also made respecting the severity of the weather conditions and the extent of the flooding. CSX contends

17

these statements imply a "false perception of imminent danger." CSX further asserts Defendants intend to utilize these statements to imply it should have halted operations that day, which is contrary to the summary judgment ruling that any suggestion CSX was contributorily negligent by failing to cease or alter its operations was preempted. CSX thus asserts the statements are irrelevant on that basis. Alternatively, it asserts the statements have no probative value and are unduly prejudicial because they could inflame the jury.

Defendants respond they do not intend to pursue their preempted defense regarding how CSX should have operated that day. They contend, however, if CSX is permitted to pursue its contribution claim at trial, they should be permitted to put on evidence regarding CSX's liability to the train crew for failing to provide a safe workplace by permitting operations to continue during Hurricane Florence and its progression as the day went on. Defendants further assert the statements are relevant for an array of permissible purposes including (1) its non-preempted defense that CSX should have and could have performed a special inspection of the tracks as required under 49 C.F.R. § 213.239, given the crew's observations of flooding and the severity of the weather along the trip, (2) establishment of the train's location at specific times in relation to the weather, (3) foreseeability the trackbed could collapse if such inspections were not performed, (4) whether the derailment could have been prevented, (5) whether CSX possessed notice flooding conditions were likely, and (6) that CSX did not need to be "warned" about the possibility of flooding in the vicinity of the derailment site. They thus contend the probative value of these statements is not substantially outweighed by any potential prejudice to CSX inasmuch as unfavorable statements do not render the same unduly prejudicial.

The statements are relevant to Defendants' remaining contributory negligence defense concerning whether CSX's duty to perform an additional site inspection was triggered

upon new warnings of the severity of the weather conditions, and whether such inspection was possible under the circumstances. The statements also provide context as to what was known and when as the train progressed along its route. The statements are thus highly probative to Defendants' defense and though they may be unfavorable to CSX, they cannot be characterized as unduly prejudicial so as to substantially outweigh their probative value. Accordingly, the Motion [**ECF 186**] is **DENIED**.

## G. *CSX's Motion to Exclude Testimony & Argument Characterizing the Weather Event – Florence – as a "Hurricane" as of September 16, 2018 [ECF 190]*

CSX seeks to preclude the introduction of testimony, evidence, or argument referring to the weather event known as Florence as a "hurricane" during the relevant timeframe of September 14 to 16, 2018. [ECF 190, 191]. CSX emphasizes the derailment occurred more than 48 hours after Florence was downgraded to a tropical storm. CSX further contends hurricane classification is based on sustained wind speeds, not rainfall, and that neither party disputes the wind speeds at the derailment site never reached hurricane strength on the day of the incident. CSX thus asserts allowing references to Florence as a "hurricane" during this timeframe would be factually inaccurate, potentially misleading to the jury, and unfairly prejudicial.

Defendants respond they do not intend to introduce evidence suggesting Florence was, in fact, an official hurricane in Anton County on the date of the derailment. [ECF 220]. Nonetheless, they contend counsel and witnesses should be permitted to refer to the broader weather system as "Hurricane Florence," consistent with its widely recognized nomenclature and public understanding. Defendants maintain Florence's status as a hurricane upon landfall, as well as the multi-day nature of the storm, are relevant to understanding the conditions their personnel confronted. Additionally, they contend the probative value of such references is not substantially

outweighed by any risk of unfair prejudice, and any inaccuracies in witness characterizations are more appropriately addressed through cross-examination rather than wholesale exclusion.

The record reflects Florence made landfall as a Category 1 hurricane on September 14, 2018, but was downgraded to a tropical storm and subsequently to a tropical depression prior to the derailment. [ECF 136 at 2, 4]. Nonetheless, Florence remained a significant multi-day weather event marked by substantial rainfall and flooding across the region. Defendants' contention that references to "Hurricane Florence" reflect common parlance rather than a technical, meteorological classification is not without merit. Indeed, as Defendants point out, witness observations and references to storm conditions spanning the lifecycle of Florence -- including its hurricane status at landfall -- are inextricably intertwined and central to understanding the circumstances leading to the derailment. In this context, a blanket prohibition on references to "Hurricane Florence" risks excluding relevant contextual information, oversimplifying the narrative, and potentially confusing the jury. Furthermore, the risk of unfair prejudice identified by CSX -- namely, the concern such references may evoke emotional responses or mislead the jury -- can be effectively mitigated through clarification of the storm's downgraded status, and the adversarial process, including cross-examination.

While the Court agrees witnesses may not inaccurately testify Florence was an active hurricane at the derailment site on September 16, 2018, references to "Hurricane Florence" as a general identifier for the broader storm system are permissible, provided the parties offer appropriate clarifications concerning the storm's official status during the relevant timeframe. Accordingly, the Motion [**ECF 190**] is **GRANTED AS MOULDED** to the extent no party may present evidence or argument asserting Florence retained hurricane classification in Anton County

on September 16, 2018, and **DENIED** as to its residue. Any disagreement respecting the scope of the ruling may be addressed at trial.

### H.      *CSX's Motion to Exclude Evidence & Testimony Regarding the Operational Status of CSX's Hamlet Yard [ECF 194]*

CSX seeks to preclude any testimony, evidence, or reference related to the operational status of the Hamlet Yard -- or any other CSX yard or terminal -- on September 16, 2018. CSX contends such information serves no relevant purpose aside from attempting to challenge CSX's decision on when and how it runs its trains, which was foreclosed by the Court's summary judgment ruling. [ECF 195]. CSX thus maintains precluding this evidence will promote efficiency and avoid unnecessary delays at trial.

Defendants respond they do "not intend 'to reference the operational status of the Hamlet Yard and other yards to challenge CSX's decision to operate trains.'" [ECF 220 at 1 (citing ECF 195 at 2)]. Defendants maintain, however, if CSX is permitted to pursue its contribution claim at trial, they "should be permitted to put on evidence of CSX's liability to the train crew for not providing a safe workplace for its crew by deciding to operate its train during Florence and despite the weather conditions as the day progressed." [*Id.* at 1–2]. It does not appear CSX has included a contribution claim in the proposed integrated pretrial order. Upon entry of that order, the pleadings will merge into the document and, if the claim is not found therein, it will likely be precluded. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (explaining that under Rule 16(e), the final pretrial order supersedes all prior pleadings and controls the subsequent course of the action).

Inasmuch as Defendants do not intend to present evidence related to the operational status of the Hamlet Yard or any other CSX yard on the day of the derailment, the Motion [**ECF 194**] is **GRANTED**.

21

***I.        CSX's Motion to Exclude Evidence & Testimony Related to CSX Rule 100.1 [ECF 202]***

CSX moves to preclude evidence of CSX Employee Manual Rule 100.1 and any subsequent testimony by expert witnesses pertaining to the same inasmuch as it is irrelevant, misleading, and highly prejudicial. [ECF 202, 203]. Rule 100.1 states as follows:

> Employees must know and comply with rules, instructions, and procedures that govern their duties. They must also comply with the instructions of supervisors. When there is uncertainty, employees must: (1) Take the safe cause, and [;] (2) Contact a supervisor for clarification.

[ECF 202 at 1 (emphasis omitted)]. CSX avers Rule 100.1 is irrelevant following the Court's summary judgment ruling that any contention CSX failed to comply with its internal regulation MWI 1110-02 in support of Defendants' contributory negligence defense was preempted. CSX proffers Rule 100.1 is a general rule and only applies to the decision making of individual employees, not to CSX as a whole in their decision-making capacity.  Because Defendants do not make a claim an individual employee has breached this Rule, CSX maintains it is irrelevant. CSX further asserts the Court has rendered "use of Rule 100.1—to criticize CSX's decision-making to operate trains—a non-issue for the trial" further demonstrating its irrelevance. [ECF 203 at 4]. CSX alternatively asserts that even if Defendants "demonstrate a narrow purpose for introducing Rule 100.1, its relevance is outweighed by the substantial danger of misleading the jury and causing prejudice." [ECF 203 at 4]. Specifically, CSX contends the language "take the safe course" in Rule 100.1 is close to the language used in the legal standard for contributory negligence, leading to a greater chance of prejudice against CSX.

Defendants respond they will not present evidence or testimony related to CSX Rule 100.1 at trial inasmuch as it is irrelevant to their remaining defenses. [ECF 230 at 1]. Nonetheless, Defendants assert they reserve the right to present such evidence if CSX is permitted to pursue its contribution claim at trial.

Inasmuch as Defendants do not intend to present evidence related to Rule 100.1 at trial, the Motion [**ECF 202**] is **GRANTED**.

## II.

Based on the foregoing discussion and analysis, it is accordingly **ORDERED** as follows:

1. Defendants' Omnibus Motion Nos. 1-12 [**ECF 174**] is **ADJUDICATED** in accordance with the rulings in the above text;

2. CSX's Motion to Exclude Evidence & Testimony Regarding Certain Historic Track Maps [**ECF 178**] is **DENIED**;

3. CSX's Motion to Exclude Evidence & Testimony Regarding 2016 Surface Alignment Alert Email [**ECF 180**] is **DENIED**;

4. CSX's Motion to Exclude Evidence & Testimony Referencing the Weather as an "Act of God" [**ECF 182**] is **DENIED** in part and **GRANTED** in part;

5. CSX's Motion to Exclude Evidence & Testimony Regarding Fact and Circumstances Described in the *Edwards v. CSX Transportation, Inc.*, Lawsuit [**ECF 184**] is **GRANTED**;

6. CSX's Motion to Exclude Evidence & Testimony Regarding Crew Statements by CSX Personnel Preceding the Derailment [**ECF 186**] is **DENIED**;

7. CSX's Motion to Exclude Testimony & Argument Characterizing the Weather Event – Florence – as a "Hurricane" as of September 16, 2018, [**ECF 190**] is **GRANTED AS MOULDED** and **DENIED** as to its residue;

8. CSX's Motion to Exclude Evidence & Testimony Regarding the Operational Status of CSX's Hamlet Yard [**ECF 194**] is **GRANTED**; and

9. CSX's Motion to Exclude Evidence & Testimony Related to CSX Rule 100.1 [**ECF 202**] is **GRANTED**.

      The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

      ENTER: July 9, 2025



Frank W. Volk
Chief United States District Judge